McWilliams v. Hagan.

JAMES P. McWILLIAMS v. JOHN HAGAN.

4r 374
f105 606 In the absence of any privity between plaintiff and defendant, a very strong case must be made out to justify the application of the maxim, that no man should be permitted to enrich himself at the expense of another, as a ground of recovery. Even among those who have dealt with each other, one may sometimes receive the benefit of the labor or expense of another without being bound to pay for it, as where a tenant has made improvements without authority from his lessor.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.

MORPHY, J. The petitioner seeks to recover of the defendant, $707 56, for work and labor done for the Union Cotton Press, in storing and arranging cotton during the months of October, November, and December, 1840. He alleges that the work was done by the order of Messrs. Huie & Hale, then in possession of and working said press, and that he received from them their *bons*, or due bills, for that amount; that during the whole of this time, the defendant had the legal title to the property, and that Huie & Hale, were in possession under him, in pursuance of private arrangements between them, and that they continued in possession until the 22d of December, 1840. The petitioner further alleges, that the cotton so stored by him, was still at the press

when the defendant took possession thereof from Huie & Hale, and that he thus procured to himself all the benefit of the work and labor performed by plaintiff. The defendant pleaded the general issue, averring that if plaintiff performed the work, he must look to those who employed him, he, defendant, never having derived the slightest advantage therefrom. There was a judgment below in favor of plaintiff, from which the defendant has appealed.

The evidence shows that John Hagan, who became the purchaser of the Union Cotton Press, on the 27th of October, 1840, at a Sheriff's sale, made at his own suit, agreed with Huie & Hale, the former owners, that he would leave them in possession, and would reconvey the press to them, upon their giving him some additional security within a specified time. That Huie & Hale, having failed to comply with this agreement, Hagan sold the property to Alfred Penn, who took possession of it on the 22d of December following. That during this time, Huie & Hale received all the profits of the press, employed plaintiff to arrange and store cotton, and gave him, now and then, due bills, some of which they have paid ; and that, at the time Huie & Hale were ejected, there remained in the press, from 8,000 to 10,000 bales of cotton arranged and stored by the plaintiff. Alfred Penn, the purchaser of the press, testified, that when he bought from Hagan, he took into view the cotton stored in the press, and gave more for it on that account ; and that it is customary for cotton, pressers to pay for the drayage, storing, and arranging of cotton in order to secure the preference in compressing it. An admission in the record shows, that Huie & Hale, while they were working the press, paid a sum of $3000 to the defendant. It is not mentioned on what account this sum was paid, but it appears probable that it was for their use and enjoyment of the press.

Under these facts, which show no privity whatever between the plaintiff and defendant, we cannot see any legal ground on which the former can recover. He was employed by Huie & Hale, while they were working the press for their own benefit, and advantage, and on their own account. He made settlements with them from time to time, and received their *bons*, trusting and looking to them for payment. Without showing any effort to re-

cover from his employers, or establishing their insolvency, he now contends, that the defendant, as the owner of the press, is liable for these *bons*, because he has, it is said, received the benefit of the labor performed by him, at the press. Even if this circumstance could in any case, be considered as a sufficient ground to recover, the benefit alleged to have been received by Hagan, from the plaintiff's labor, is by no means so apparent. Penn says, to be sure, that the cotton stored in the press was taken by him into view when he purchased, on account of the profits which might be derived from the compressing of it; but it is not shown that the fact of the cotton being stored in the press, was known to the defendant, or was considered at all by him in the bargain. He might not, perhaps, have consented to sell the property for a dollar less than the price he received, had there been no cotton stored in it. The profits expected to be derived from the compressing of the cotton were uncertain, and contingent, as the cotton might have been shipped, as it frequently is, without being compressed. In the absence of any privity, a very strong case indeed must be made out, to justify the application of the maxim, that no man should be permitted to enrich himself at the expense of another, as a ground of recovery. Even among persons who have had dealings with each other, one of them may sometimes receive the benefit of the labor or expense made by the other, without being bound to pay for it. The owner of a house, for instance, is not bound to pay for improvements which it may have suited the interest or convenience of a lessee to make, if unauthorized by him, although such improvements may have enhanced the value of the property. Were it otherwise, a maxim so replete in itself, with natural equity, might lead to the greatest injustice. In the present case, we are of opinion, that the plaintiff must look for remuneration to those who employed him, and that he cannot seek payment from one who did not order his services, and who is not even clearly shown to have been benefited by them.

It is therefore ordered that the judgment of the Commercial Court be reversed, and that ours be for the defendant, with costs in both courts.

*Bradford,* for the plaintiff.

*C. M. Jones,* for the appellant.