106 So.2d 276

In re INTERSTATE TRUST & BANKING COMPANY In Liquidation.

No. 43751.

April 21, 1958.

On Rehearing Nov. 10, 1958.

Alvin R. Christovich, New Orleans, for plaintiffs-appellants.

Arthur J. O'Keefe, Jr., New Orleans, for defendants-appellees.

HAMITER, Justice.

Appellants herein are attorneys at law who seek to be awarded a certain fee for services allegedly rendered by them to *all* of the depositors and creditors of the Interstate Trust & Banking Company in Liquidation. Recovery was denied by the district court.

The instant litigation is a sequel to In re Interstate Trust and Banking Company in Liquidation, Numbered 39,142 on the docket of this court (see 222 La. 979, 64 So.2d 240). Therein, these appellants represented some of the bank's depositors and creditors in opposing four tableaus of distribution (Nos. 13, 14, 15 and 16) in the liquidation matter because of a failure to provide for the payment of interest on unpaid balances that had been frozen since 1934. Opponents prayed for recognition of their claims "for legal interest as herein set forth, the payment thereof to be made to opponents in due course of time, out of the assets of said Liquidation and by preference

and priority over all persons whomsoever, * * *." The effect of the final ruling of this court was to order payment of legal interest to *all* depositors and creditors, including those who failed to oppose the distribution, the total amount of which interest (as later disclosed) was $728,281.01.

Thereafter these appellants, through a motion filed on their behalf in the district court, obtained a rule ordering the state banking commissioner to show cause why their claim for compensation for professional services rendered to *all* depositors and creditors in the former preceeding should not be recognized and fixed at 25% of the total amount of interest to be paid. While conceding that they had employment contracts only with the particular depositors and creditors whom they specifically represented in the interest litigation they alleged and urged that because of their services the remaining depositors and creditors were benefited and hence should pay a proportionate share of the compensation (25% of all interest payable) to which they are entitled.

On behalf of the unrepresented depositors and creditors the commissioner resisted the claim; and, as we have stated, the district court disapproved it. This appeal followed.

Appellants cite only one case from the Louisiana jurisprudence which might be said to support their claim, it being Friend v. Graham's Administrator, 10 La. 438.

But clearly the holding therein has since been repudiated. Thus, in Wailes and Mathews v. Succession of Brown, 27 La. Ann. 411, the court quoted from the Friend case (an excerpt relied on here by appellants) and said:

"This, it is contended, is overruled in the case of Roselius v. Delachaise, 5 [La.] Ann. 481 [52 Am.Dec. 597], where the principle was established that the right of an attorney at law to remuneration depends on a contract (or appointment) and that he can not recover from one who did not employ him, however valuable may be the result of his services to such person.

"This, we think, is the correct doctrine and the one which has since been followed. See [Michon v. Gravier] 11 [La.] Ann. 596.

"In reference to the case in [Friend v. Graham's Adm'r] 10 La. [440], above cited, it may be said, that no one heir, as such, represents the succession, so as to bind it, and if he thinks his interest in the succession is of such extent or importance as to warrant him in sueing [sic] for the removal of the curator or other representative, he should bear the expense of the counsel employed by him for that purpose. He could hardly expect the succession to pay the fee if he failed."

The doctrine announced in the Roselius case has since been applied in our juris-

prudence. See Cooley v. Cecile, 8 La.Ann. 51; Succession of Kernan, 105 La. 592, 30 So. 239; Forman v. Sewerage and Water Board of New Orleans, 119 La. 49, 43 So. 908; Price v. Foster, 182 La. 79, 161 So. 161; Succession of Russell, 208 La. 213, 23 So.2d 50 and Succession of Guichard, 225 La. 315, 72 So.2d 744, 745. In the Guichard case, the opinion of which contains our latest expression on the subject, we said: "* * * Under the jurisprudence of this state it is well settled that an attorney representing particular heirs or claimants in a succession proceeding has no claim against the estate for his services even though they were valuable to, and benefited, the other heirs, and that in such cases the attorney must obtain payment from the persons or heirs by whom he was employed. * * *"

Appellants attempt to distinguish these cases on a factual basis. It is true that they involved certain circumstances not found here. But each opinion clearly shows that the presence of the particular circumstances did not form the basis of the court's holding; rather, as indicated by the above quotation from the Guichard case, each decision was based squarely on the legal proposition that the right of an attorney to remuneration for his professional services depends on a contract, either expressed or implied.

Moreover, it appears that our present rule ·is generally in keeping with that applied by the courts of other states. See 5 American Jurisprudence verbo Attorneys at Law, Sections 154 and 155, and 7 C.J.S. verbo Attorney and Client, § 175.

Numerous cases from other jurisdictions (many of them from federal courts) are cited in appellants' brief; but we do not find that all support the principle contended for. Most are authority for the doctrine enunciated in 14 American Jurisprudence verbo Costs, Section 74, as follows: "A court of equity or a court in the exercise of equitable jurisdiction will, as a general rule, in its discretion, order an allowance of counsel fees or, as it is sometimes said, allow costs as between solicitor and client *to a complainant* (and sometimes directly to the attorney) who at his own expense has maintained a second successful suit for the preservation, protection, or increase of a common fund or of common property or who has created at his own expense, or brought into court, a fund in which others may share with him. The rule rests upon the ground that where one *litigant* has borne the burden and expense of the litigation that has inured to the benefit of others as well as to himself, those who have shared in the benefits should contribute to the expense. * * *" (Italics ours.)

Conceding arguendo that such doctrine is recognized in this state (and it might be successfully argued that McGraw v. Andrus, 45 La.Ann. 1073, 13 So. 630, is authority for it) we do not believe that it is

applicable here. These appellants are not complainants, representatives of a class, who at their own expense conducted litigation successfully for the benefit of all members of such class and who now seek contribution (from the other members who have been benefited) for the costs (including attorneys' fees) which they have expended or for which they have become obligated to pay. Rather, appellants are attorneys at law who are seeking additional compensation for professional services rendered—a fee in excess of that which their clients agreed to pay them—from persons with whom they had no contracts of employment.

Therefore, in accordance with our well established jurisprudence we must and do hold that appellants cannot recover from those depositors and creditors who did not, either expressly or impliedly, employ them. They are entitled only to such remuneration as their clients agreed to pay. However, this remuneration is not disclosed by the record and, hence, the rights of appellants to recover it will be reserved to them.

For the reasons assigned the judgment of the district court is amended by reserving to appellants whatever rights to compensation they may have as against their respective clients; and, as thus amended, it is affirmed.

FOURNET, C. J., and PONDER, J., dissent.

FOURNET, Chief Justice (dissenting).

It is my opinion that the attorneys who seek redress here are entitled to receive a reasonable compensation for the services they have rendered in making available to all depositors and creditors of the old Interstate Trust & Banking Company the sum of $728,281.01, as legal interest on those frozen balances in the bank at the time it was closed and placed in liquidation that remained to be distributed under the final account of the liquidator, and which constituted approximately seventeen and a half per cent of the original frozen deposits.

In the lower court the Bank Commissioner alone opposed the rights of these attorneys to the fees claimed. It is apt to observe that this is the same official who, throughout the former trial, vigorously opposed the right of these same creditors and depositors to be paid this interest. It seems to me it comes as bad grace for him to now object to the right of the attorneys to receive compensation out of the funds their services made available when the creditors and depositors themselves neither appeared in the lower court to contest the claim for fees nor appeared in this court to oppose it. Furthermore, it is inescapable from a mere reading of the opinion when the case was formerly before us (222 La. 979, 64 So. 2d 240) that we actually there considered these attorneys represented not only the depositors and creditors that caused their appearance in court to oppose the final

account when it failed to provide for this interest, but also represented all of the other depositors and creditors in this same class or group, since they are only entitled to the interest if they claim it in opposition to the account.

The authorities relied on by the majority are clearly inapposite from a factual and a legal standpoint since it does not appear in any of the cited cases, as is true in the instant case, that by their services the attorneys made available funds to parties who would, otherwise, have been foreclosed from making any claim to them, and their right to such funds would, therefore, have been forever lost and forfeited.

## On Rehearing

HAWTHORNE, Justice.

We granted a rehearing in this case in order that we might give further consideration to our original decree denying to ·these appellants the attorneys' fees which they sought.

The appellants are attorneys who represented a comparatively small group of the depositors of the Interstate Trust & Bank-·ing Company, now in liquidation, and who initially in behalf of their clients opposed the homologation of certain tableaux of distribution of the funds of the bank in liquidation proposed by the ·state bank·commissioner, contending that 5 per cent in-·terest per ·annum··should· be· paid on the deposits from January 4, 1934, the date the bank was placed in liquidation. After trial the lower court rendered judgment ordering the commissioner to pay *all* depositors interest at the rate of 5 per cent per annum from January 4, 1934, on the full amount of their deposits frozen on that date. On appeal this court annulled and set aside the lower court's judgment insofar as it related to unopposed tableaux of distribution filed by the bank commissioner, but affirmed the judgment insofar as it related to the tableaux of distribution which were opposed. As stated in appellants' brief, the effect of the decree of this court was to order the commissioner to pay 5 per cent interest on the principal sum of frozen deposits still undistributed (17½ per cent of the total frozen deposits) from January 4, 1934, the date of the liquidation, until paid. See In re Interstate Trust and Banking Company, 222 La. 979, 64 So.2d 240. Thus it will be seen that this court recognized the right of all depositors to be paid 5 per cent interest on 17½ per cent of all their frozen deposits. This interest ordered paid to all depositors amounted to $728,281.01 as of July 15, 1957.

The attorneys who initially represented only some·of the depositors in the Interstate Bank case above cited and discussed contend in the instant proceedings that but for their labor and skill the depositors as a class would have received no interest,

and accordingly they ask for attorneys' fees of 25 per cent of the interest decreed to be due all depositors, amounting, as stated above, on July 15, 1957, to more than $700,000. The lower court denied petitioners' claim, and they appealed. On original hearing this court affirmed the judgment of the lower court, and it is our decree which we are here reexamining.

■ The principal ground on which our decision on original hearing was based was that in Louisiana "the right of an attorney to remuneration for his professional services depends on a contract, either express or implied". This is undoubtedly a correct and well recognized principle of law, but there are certain exceptions to this legal principle, and we have reached the conclusion, for reasons which will hereafter be apparent, that the facts of the instant case bring it under one of those exceptions.

This court on original hearing discussed the doctrine that where one litigant has borne the burden and expense of litigation that has inured to the benefit of others as well as to himself, those who have shared in the benefits should contribute to the expense. The court there stated that, even if it were conceded that this doctrine is recognized in this state, these attorneys have not brought themselves within its scope.

The doctrine which the court was there discussing is stated in 49 A.L.R. 1150 thus:

"The rule is that a court of equity, or a court in the exercise of equitable jurisdiction, will, in its discretion, order an allowance of counsel fees, or, as it is sometimes said, allow costs as between solicitor and client, to a complainant (and sometimes directly to the attorney) who at his own expense has maintained a successful suit for the preservation, protection, or increase of a common fund, or of common property, or who has created at his own expense, or brought into court, a fund in which others may share with him."

This court has in several cases discussed, and in one applied, this so-called fund doctrine. In McGraw v. Andrus, 45 La.Ann. 1073, 13 So. 630, 633, Andrus made what purported to be a cession of property, but did not include all of his property in the schedule of assets and shortly thereafter began to dispose of the withheld property through a third person. Some of Andrus' creditors sued to recover the property which had been fraudulently withheld to satisfy their particular claims, and they were successful, the court decreeing that the property withheld by Andrus be *sold to satisfy the debts of the particular creditors* who had brought suit. On appeal this court rejected the lower court's judgment insofar as it held that the proceeds of the attached property be applied to the claim of the petitioners alone. Instead it

was ordered that the funds be turned over to the provisional syndic of the insolvent estate of Andrus, subject to the claims of all the creditors. In McGraw this court said:

"The provisional syndic has not aided in unmasking the fraudulent concealment of the debtor's property. This has been accomplished by the plaintiff creditors, who have devoted time, money and labor to reach this property. The mass of creditors receive the benefits of it. They must pay for all costs and expenses, including attorneys' fees."

On application for rehearing the court amended the judgment thus:

"In relation to the application of appellees, we will leave the amount of attorneys' fees to be fixed in the insolvent proceedings. We are not in the possession of sufficient facts to definitely ascertain the amount."

In discussing this doctrine the court in Succession of Kernan, 105 La. 592, 30 So. 239, 243, had this to say:

"In the case at bar the parties employing the attorneys did not profess to act for parties other than themselves. Had they, in making the employment, done so professedly for other parties, either separately or jointly with themselves, it could be conceded that these attorneys would have a direct right of action against the latter, if they stood by, making no objection, and finally availed themselves of the benefits resulting from their labor. The absence of actual authority originally to have so employed them would be replaced or cured by a ratification of that act * * *."

However, it is to be observed that this court evidently overlooked the McGraw and Kernan cases when it said in Dreifus v. Colonial Bank & Trust Co., 127 La. 1086, 54 So. 358, 359:

"* * * it would serve no useful purpose to review the jurisprudence as to the right of an attorney to recover fees from parties who have not employed him, but who have been directly benefited by his services. The jurisprudence of this state has uniformly denied such right in cases where the services of counsel have been most valuable to parties not represented by him. Roselius v. Delachaise, 5 La.Ann. 481, 52 Am.Dec. 597; Forman v. Sewerage & Water Board, 119 La. 49, 43 So. 908. *There may be exceptions to this rule in other jurisdictions, where the services of counsel have preserved common rights or common property, in the interest of all parties concerned. It will be time enough to consider such a case when it is presented.*" (Italics ours.)

The doctrine which these attorneys, appellants, seek to invoke is well recognized and applied by the United States Supreme Court and other federal courts. See Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157; Central Railroad & Banking Co. v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915; Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Bishop and Collins v. Macon Lumber Co., D.C.1957, 149 F.Supp. 46.

For instance, in Central Railroad & Banking Co. v. Pettus, supra [113 U.S. 116, 5 S.Ct. 391], some unsecured creditors of the railroad company in Alabama instituted proceedings in equity on behalf of themselves, and of all other creditors of the same class who would come in and contribute to the expenses of the suit, to establish a lien on the property of that company in the hands of other railroad corporations. The creditors were successful. The attorneys of the creditors who had brought the suit then filed a petition by which they sought payment of attorneys' fees out of a percentage of the money obtained for the unsecured creditors. In applying the fund doctrine and allowing the attorneys to recover under it the United States Supreme Court said:

"* * * It is true that the bill states that it was brought for the benefit of all creditors who should become complainants therein; but it was intended to be, and throughout was, conducted as a suit for the benefit, not exclusively of the complainants, but of the class to which they belonged. It was so regarded by all connected with the litigation."

Due solely to the efforts and industry of these attorneys in the case of In re Interstate Trust and Banking Company, 222 La. 979, 64 So.2d 240, a fund amounting to more than $700,000 was created and brought into existence, and except for their services none of the depositors would have received any interest on any of their frozen deposits. Consequently all depositors as a class benefited and were enriched by these attorneys' efforts. There can be no dispute as to this fact or as to the fact that these attorneys here are seeking attorneys' fees to be paid out of the very fund which their efforts created.

In briefs and argument on rehearing the appellant attorneys stressed and brought forcefully to our attention for the first time the fact that although initially they instituted proceedings to recover interest in the Interstate Bank case in behalf of a small group of the depositors whose deposits had been frozen, both the trial judge and this court considered the case as one for the benefit of all depositors. The judgment of the trial court awarded all depositors interest, as stated above. On appeal these attorneys no longer sought interest for a small group by preference and priority over all other persons, but

sought affirmance of the judgment of the lower court which allowed interest, all the way back to the institution of the liquidation proceedings, *to all of the depositors.* In other words, in that appeal these attorneys championed the cause of all depositors of the bank in liquidation as a class, and although this court amended the judgment, it itself showed that it considered the case as one in behalf of all depositors by awarding interest to all depositors as stated above.

█ Under these facts and circumstances we can reach no other conclusion than that these attorneys have brought themselves within the scope of the doctrine which we have discussed above and on which they rely for the recovery of their fees, and that the facts of this case bring it under this exception to the principle on which our decision on original hearing was based. Consequently it is only fair and equitable that these appellants should recover reasonable attorneys' fees for their services.

█ We do not think, however, that we should determine on this appeal the amount of their fee. They seek to recover 25 per cent of the total amount of the

interest due to all depositors, but the trial judge denied them any fee whatever. We have decided that the better course under these facts and circumstances is to remand the case so that the judge of the lower court can determine the amount of the award to which these attorneys are entitled. In determining the amount to be awarded them as reasonable attorneys' fees, that court should consider the extent and nature of the services rendered by these attorneys; the labor, time, and trouble involved; the results achieved; the character and importance of the matter; the amount of money involved; the learning, skill, and experience exercised; and the difficulty of the legal problems. In fixing these fees on a quantum meruit basis, the trial judge should also take into consideration, but of course not be bound by, the terms of the contracts for compensation which these attorneys had with their original clients.[1] Moreover, the trial court may on the remand hear any evidence, such as expert testimony, which may be necessary, and any depositor or other party at interest may intervene.

For the reasons assigned the judgment of the lower court denying to these ap-

---

1. The attorneys here are seeking to recover their fees in quantum meruit from all the depositors, including their original clients. Of course they cannot be permitted to recover both in contract and in quantum meruit from their original clients; nor should the depositors they did not represent initially, under the facts of this case, be required to pay a greater percentage of the fund created than that which may be called for in the contracts of employment which these attorneys had with their original clients. See *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, at page 128, 5 S.Ct. 387, 28 L.Ed. 915.

pellants attorneys' fees to be paid out of the interest fund due to all the depositors of the Interstate Trust and Banking Company in Liquidation is annulled, reversed, and set aside. It is now ordered that these attorneys recover reasonable attorneys' fees to be paid from this fund, and it is further ordered that the case be remanded to the district court for determination of the amount of their fees.

HAMITER, J., dissents adhering to the reasons assigned with original hearing.

McCALEB, Justice (concurring).

Since my views in this case are somewhat different from those expressed in the majority opinion, I feel impelled to set them down in writing.

Generally speaking, I believe that there should be a strict adherence to the uniform jurisprudence of this Court that an attorney is without right to recover fees from parties who have not employed him, even though they have been directly benefited by his services (see Dreifus v. Colonial Bank & Trust Co., 127 La. 1086, 54 So. 358 and the many authorities cited in our original opinion) for, as well stated in McWilliams v. Hagan, 4 Rob. 374, "In the absence of any privity, a very strong case indeed must be made out, to justify the application of the maxim that no man should be permitted to enrich himself at the expense of another, as a ground of recovery." Yet this rule cannot be regarded inflexible as there may undoubtedly be instances, in which an attorney has performed valuable services for another without express or implied authority from which a quasi contract would result pursuant to Article 2295 of the Civil Code or he may be recognized as a negotiorum gestor and be entitled as such to reimbursement for his labors under Article 2299.

I do not subscribe to the majority view that the attorneys here seeking compensation from the depositors from whom they had no mandate, are entitled to recover on the theory that the oppositions they filed for their own clients were class actions and by their efforts, they created or preserved a "fund". The record is clear that these lawyers never formally asserted that they were representing a class; the pleadings showing that the oppositions were expressly restricted to the claims of the depositors hiring them.

Nor does it seem to me that a fund was either created or preserved by the oppositions. The claims were for the enforcement of the legal obligation of the liquidator· to pay interest on the total amounts of the opponents' deposits from the inception of the judicial liquidation, an obligation which had already been recognized by this Court in Liquidation of Canal Bank & Trust Company, 211 La. 803,

30 So.2d 841 and Bank of Baton Rouge v. Hart Estate, Inc., 216 La. 603, 44 So.2d 311.

The case, in my opinion, is not parallel to the so-called "fund doctrine" pronouncements of the common law and federal courts, which are treated extensively in the annotation 49 A.L.R. 1150, quoted from in the majority opinion.[1]

On the other hand, I am convinced that the attorneys before us are entitled to recover on another basis—that is, because they have been successful in securing interest for the depositors, who failed to oppose the liquidator's account, recognition of their right to interest on their deposits to which they would not have been entitled under the jurisprudence in effect at the time.

In the Canal Bank & Trust Company case, which was decided in 1947, this court held that, whereas depositors of the bank in judicial liquidation, having been closed by order of the President of the United States in the monetary emergency arising out of the depression, were entitled to legal interest on their deposits, judicial enforcement of this right was available only to those depositors opposing the accounts filed by the bank liquidator and, further, that the depositors' acceptance of partial distributions paid by the liquidator operated as a waiver of the right to claim interest on the amounts received.

Notwithstanding this pronouncement, the district judge, after a trial of the oppositions of the creditors represented by the present applicants, ordered the Bank Commissioner to pay *all* creditors and depositors interest at the rate of 5% per annum from the inception of the liquidation on the full amount of the deposits. The liquidator appealed from this judgment and counsel (apparently appearing for all depositors whether opponents or not) questioned the correctness of our ruling in the Canal Bank case that depositors, failing to oppose provisional distribution of the liquidation, were bound by the judgments of homologation and could not claim interest on the amounts distributed. And, although our opinion with respect to these complaints and those of the liquidator appellant (see In re Interstate Trust & Banking Co., 222 La. 979, 64 So.2d 240) was

---

1. Nor do I perceive that McGraw v. Andrus, 45 La.Ann. 1073, 13 So. 630, controls here. The court, in that case, did not give recognition to the so-called fund doctrine in this State. There, some of the creditors of an insolvent, who were successful in having certain property which he had fraudulently transferred, declared a nullity and returned to his estate, were claiming that they alone were entitled to the benefit of the recovered property and that it should be applied to their debt. The court rejected this contention but stated that, since the unmasking of fraudulent concealment of the debtor's property had been accomplished by the plaintiff creditors, all costs, including attorneys' fees, should be paid out of the insolvent's estate.

said to be controlled by the Canal Bank decision, the decree, which reversed the lower court only insofar as it ordered the Bank Commissioner to pay interest on funds disbursed in accordance with provisional accounts homologated without opposition and affirmed it in other respects, had the effect of limiting the Canal Bank decision in that it approved the order of the trial judge awarding interest on the undistributed 17½% of the total frozen deposits, even though those persons (excepting the opponents therein) were not claiming interest thereon and had not opposed the account.

Thus, it is seen that, in obtaining this judgment, appellants herein performed a service to all depositors who were not before the Court, which was not incidental to the claims of the opponents employing them and over and above the services rendered to their clients.

Under these exceptional circumstances, I think that appellants are entitled to recover by virtue of Articles 2295 and 2299 of the Civil Code and therefore respectfully concur in the decree.