REID, Judge.
Plaintiff, a firm of lawyers at Houma, Louisiana brought this suit for attorneys fees against the defendants Betty Blanchard and her husband Hilary P. Blanchard. They claim and there is no dispute about the fact that plaintiffs entered into an employment contract with the Voisin heirs, including Mrs. Lucy Voisin Blanchard relative to employment and compensation for a suit to be filed to set aside an oil lease. After the contract was signed, but before the suit was filed, Mrs. Lucy Voisin Blanchard died, leaving three children, Betty Blanchard one of the defendants herein, Ethel Blanchard, wife of Freddie Trahan and George Blanchard Jr. Plaintiffs allege that the three heirs came to the office a day or two after the death of their mother and told plaintiffs to keep on with the suit and they wanted them to handle the matter as they had agreed to under the contract with their mother.
Subsequent to that Mrs. Betty Blanchard sold her interest in the land involved to her husband Hilary Blanchard.
In order to get the chronology of the events straight, Mrs. Lucy Voisin Blanchard’s contract with the plaintiffs was signed on April 25, 1963. Mrs. Blanchard died on July 26, 1963. Mrs. Betty Blanchard sold her interest to Hilary Blanchard on October 28, 1963. On November 7, 1963 plaintiffs as attorney for Anthony Voison et al. filed a suit entitled “Anthony Voisin Et Al vs. The Harry Bourg Corporation Et Al,” No. 23504 on the docket of the 17th Judicial District Court, Parish of Terrebonne, making Betty Blanchard one of the parties plaintiff.
The Succession of Mrs. Lucy Voisin Blanchard was opened on November 19, 1963, probate number 4466 of the docket of the said Court. The judgment recognized Mrs. Betty Blanchard as one of the heirs. Subsequent thereto plaintiffs negotiated with Texas Gas Producing Company, principal defendant, as a result of which a very advantageous compromise was effected. However, defendants refused to sign the contract settlement and stated that they no longer had employed the plaintiffs as their attorneys.
On May 12, 1964 a compromise agreement was effected whereby the plaintiffs in said proceedings would receive a total of $20,-000.00 as bonus for past due royalty, amounting to 16%% of production and sales of oil and gas attributable to the leased acreage through March 31, 1963, and royalty payments amounting to 26%% of production and sales of oil and gas attributable to the leased acreage from and after April 1, 1963, the date upon which formal demand for cancellation of the lease had been made.
Plaintiffs claim as a result of that compromise agreement the Voisin heirs were obligated to pay them one-half of the excess royalty over 16%% and % of any cash consideration or bonus that they might receive as a result of any compromise. As a result of said agreement the defendants herein would have received $1666.66 in cash and a net increase of 10% in the royalties they were receiving from these lands. The defendants refused to sign the agreement although all the other heirs did execute it.
Plaintiffs have brought this suit for one-half of the $1666.66 cash bonus that the defendants would have received, or the sum of $833.33, and asked for an order on the said Betty Blanchard ordering her to convey to them 5% of the royalty attributable to her interest in the same property. Plaintiffs further pray that the act of sale from Betty Blanchard to Hilary Blanchard be decreed an absolute nullity and that Betty Blanchard be decreed the owner of an undivided %2th interest in lands described herein.
Defendants first filed an exception of no cause of action.
Plaintiffs filed an amended petition pleading in the alternative that if a con *581 tract did not convey to them a power or mandate coupled with an interest, then they asked for judgment on the basis of quantum meruit and alleged that the services were worth the one-half of the royalty and one-half of the cash bonus as claimed in their original petition.
The exception of no cause or right of action was overruled by the Trial Court and the defendants filed an answer admitting the execution of the contract by Mrs. Lucy Voisin Blanchard but denying that they had employed plaintiffs as their attorneys, alleging that the contract expired with the death of Mrs. Voisin and admitting they refused to sign the compromise.
On January 30, 1964 Mrs. Blanchard wrote to the plaintiffs by registered mail advising them that she did not engage their services in this matter and had not intended in any way to be joined in this suit.
Mr. Hilary Blanchard wrote a similar letter to the plaintiffs on January 24, 1964. Plaintiffs acknowledged receipt of these letters by letter which stated their services and that they had negotiated a very advantageous settlement. They stated that they did not mean to force themselves tipon them as attorneys and asked them to advise them the name and address of their attorney in order that they may contact him with reference to a settlement of the obligation they were supposed to have had with the plaintiffs.
The matter was tried in the Lower Court and the Trial Judge with written reasons rendered judgment in favor of the plaintiffs against the defendants, Betty Blanchard in the full sum of $833.33 and ordering her to convey to the plaintiffs 5% of the royalty attributable to her undivided half interest. It also decreed that the sale of her interest in the land to Hilary Blanchard be decreed null and void, in contradiction of the Civil Code of Louisiana. From this judgment the defendants have brought this appeal.
Our Learned Brother below in his written reasons for judgment found the following facts with which we are in accord, to-wit:
“The original employment as stated was in an effort to cancel a mineral lease. The plaintiffs have alleged that the best that could be done was a compromise settlement which was negotiated by their efforts, but that the defendants failed to execute the compromise agreement and that this was an arbitrary effort on their part to avoid the contract that their mother had signed, later ratified by them.
The plaintiffs have finally alleged that the purchase and the sale between Mrs. Blanchard and her husband was an attempt to place the property in question in the hands of a third party and defeat the plaintiffs’ claim for attorney fees. In this respect plaintiffs alleged that the sale be voided and that it contravenes the Civil Code of Louisiana relative to contracts between husbands and wives.
At the trial, the plaintiff Lofaso testified and by stipulation the plaintiff Bourg testified similarly. Mr. Lofaso and by stipulation Mr. Bourg verified each and every allegation set forth in their petition. On behalf of the plaintiffs Mr. Blake Arata, who was the attorney for the Texas Gas Producing Company, also testified. Mr. Arata went into the complexities and ramifications of the original lawsuit for which the plaintiffs were hired for the cancellation of the mineral lease, and as to the serious dispute which existed between Union Oil Company and Texas Gas Producing Company.
The Court is of the opinion from the testimony of Messrs. Lofaso, Bourg and Arata that the proposed compromise of the lawsuit to cancel the mineral lease was fair and reasonable and to the best interest of the clients of Messrs. Lofaso and Bourg, the defendants herein.
*582 The defendant presented only one witness, the defendant, Mrs. Betty Blanchard. Her testimony was that she had never instructed Mr. Lofaso to continue to represent her in the same manner as he had her mother. In rebuttal the plaintiffs put on two witnesses, the brother and sister of the defendant who had testified, that is Betty Blanchard. The sister testified that she was present when Betty Blanchard instructed Mr. Lofaso to continue to represent her, but the brother could not recall specifically giving instructions, but did remember being present, and that the lawsuit had been discussed.
******
The Court is further of the opinion that the sale between the defendants Betty Blanchard and Hilary Blanchard is null and void, in contradiction of the Civil Code of the State of Louisiana.
The Court is further of the opinion that attorneys Lofaso & Bourg did a considerable amount of work in working out the compromise of the lawsuit that sought to cancel the mineral lease, and they are entitled to the benefits of their contract of employment.”
The appellants filed three specifications of error. The first one is that the Court erred in decreeing the defendant Betty V. Blanchard ratified the contract of her mother, and the second the Court failed to consider the letters of Betty V. Blanchard and Hilary Blanchard advising the plaintiffs that they did not wish them to represent them in this matter. Since these two are so closely interwoven we will take them up together.
The plaintiffs in their Brief state that while the evidence clearly showed that Mrs. Betty V. Blanchard did ratify the contract they admit that the letters of Betty Blanchard terminated this relationship on or about January 30, 1964. They also concede that the contract between Mrs. Lucy Voisin Blanchard and the plaintiffs terminated upon her death, the contract not containing a vested interest in the property.
The third specification of error is as follows:
“In failing to consider that no benefits were shown to have occurred or accepted by Betty V. Blanchard and Hilary Blanchard as a result of the compromise effected by Lafaso and Bourg or by the dismissal of suit No. 23,505, with prejudice to all parties.”
The issues of this case will therefore have to be decided upon the amount of the fee due the plaintiffs on a quantum meruit basis. There is no question but what plaintiffs rendered some valuable services to the Voisin heirs in procuring this compromise settlement. The uncontradicted testimony of Mr. Arata, an attorney representing the Texas Gas Producing Company and of the plaintiffs is to the effect that the settlement was very advantageous. The Voisin heirs secured an increase in the amount of cash bonus, in the amount of the royalty, and a settlement of a boundary dispute which was one of the reasons why the royalties had not been paid. The compromise settlement also increased the amount of acreage to be covered by the lease all of which increased the amount of compensation the Voisin heirs were to receive.
It is true that after the receipt of this letter by the defendants the plaintiffs signed a motion dismissing the suit of the Voisin heirs against the Texas Gas Producing Company and the Harry Bourg Corporation. After they received the letter from the Blanchards discharging them as attorneys, the facts show that at that time Mr. Blanchard had contacted the Texas Gas Producing Company and had demanded and received past due rentals and royalty. They therefore were in the position of ratifying the lease. The Texas Gas Producing Company and Union Oil Company advised the defendants that they were ready and willing to make the same settle *583 ment with them as they did with the remaining Voisin heirs, but they were advised by Mr. Blanchard that he would not sign anything because he was afraid that it would affect his suit or create a situation where they would be entitled to attorneys fees. They seemed very anxious to avoid paying the plaintiffs any fees whatsoever for their services.
The evidence is undisputed in the record that the work in preparing the demand for cancellation of the lease, checking the abstracts, filing the suit, and so forth, were 95% completed before the Blanchards advised the plaintiffs they were no longer their attorneys, if they ever were.
The Supreme Court of this State has passed on the method of determining the quantum to be awarded as reasonable attorneys fees in the case of In re Interstate Trust and Banking Company, 235 La. 825, 106 So.2d 276 (1958). In this case the Supreme Court held as follows:
“In determining the amount to be awarded them as reasonable attorneys fees, the court should consider the extent and nature of the services rendered, by these attorneys; the labor, time and trouble involved, the results achieved; the character and importance of the matter; the amount of money involved; the learning, skill, and experience exercised; and the difficulty of the legal problems. In fixing these fees on a quantum meruit basis, the trial judge should also take into consideration, but of course not be bound by, the terms of the contracts for compensation which these attorneys had with their original clients.”
With regard to the responsibility and the work done by the plaintiffs in effecting the compromise we refer to Mr. Blake Ara-ta, attorney for the Texas Gas Producing Company. He testified at length into the problems and perplexities, suit for cancellation for the mineral lease as a whole and discussed in detail for the benefit of the Court all of the separate and distinct problems which were settled to the benefit of all the Voisins at the same time the suh for the cancelling of the mineral lease was compromised. According to his testimony there had been previously a serious dispute which existed between the Union Oil Company and Texas Gas Producing Company with reference to certain of the acreage claimed by the Voisins, which dispute necessarily involved all the Voisins. He testified further that from the date of the initial production through the date of the settlement the Voisins were at no time paid any royalty on any portion of that property but that as an integral part of the settlement of the lawsuit for cancellation an agreement was made at the insistence of plaintiffs that the Texas Gas Producing Company would at their own expense settle the dispute with the Union Oil Company. He testified that this settlement was made and with the consideration being paid by the Texas Gas Producing Company to Union Oil Company they effected a settlement and with the concurrent commencement of the payment of royalty to the Voi-sins on the total amount of acreage contained in the tract, including that which had been previously claimed by Union Oil Company and which payment had been withheld by Texas Gas Producing Company.
Mr. Arata also testified concerning the boundary agreement which plaintiffs insisted upon as attorneys for the Voisin heirs. He also testified that the boundary agreement was signed by all the Voisons with the exception of the defendants, and Harry Bourg Corporation, who were party defendants to the suit for cancellation.
There is no question but what defendants received an advantage from this settlement through the efforts of the plaintiffs and that their actions indicated that the sole reason they would not consummate the agreed compromise settlement was because they did not want to pay the plaintiffs their attorneys fees.
*584 The Trial Judge in fixing quantum awarded plaintiffs the same attorneys fees which had been specified in their contract. The Trial Judge had held that the defendant had ratified the contract recently entered into between plaintiffs and their mother. However, as hereinbefore set forth they have agreed that this contract expired with the death of Mrs. Blanchard and we will have to fix the fee on a quantum meruit basis.
With regard to the $833.33 to be paid out of the cash received by the defendants we find no error. However, the Judge erred in awarding the plaintiffs the vested interest in the future rentals and royalties which would accrue as a result of the compromise settlement. The percentage set forth on the difference between the original royalty and the compromise royalty is fair and just due to the circumstances. However, this would give the plaintiffs a vested interest in this property by parole testimony, and this cannot be done under the laws of Louisiana. The Court cannot order the defendant, Mrs. Blanchard, to convey to the plaintiffs any portion of the royalty interest attributable to her share in the above described property.
A recent case of Hayes v. Muller, 245 La. 356, 158 So.2d 191, sets forth the law applicable in the following words, towit:
“And in Ingolia v. Lobrano, 244 La. 241, 152 So.2d 7, we held recently, with reference to such statute, that ‘ * * * applicable to the mineral leases and contracts is the same requirement of written testimonial proof that governs the transfer of immovable property.’ In other words the parol evidence rule applies to transactions involving mineral leases, just as it does to those affecting real estate.
“It is the contention of these plaintiffs that the parol evidence rule is not applicable, since title to the lease will not be affected (it having been transferred' to Louisiana Gas Corporation) ; that they are merely seeking to recover profits derived from Muller’s sale. Their claim to such profits, by the explicit allegation of their petition, rests on a verbal agreement that the property would be bought and sold for their benefit; and that the defendant, in a breach of this agreement, handled the lease in his name and is retaining the profits derived therefrom. (Emphasis supplied)
“The important question then is: Can the plaintiffs show such an agreement by parol? We think not. The parol evidence rule has been applied by this court not only in cases involving contracts which directly affect title to realty but also in others where the litigants merely sought to derive benefits growing out of verbal agreements relating to the sales of immovable property.”
The record was void of any attempt to fix any value as attorneys fees resulting from the effort made by plaintiffs in securing this compromise settlement.
As we have hereinabove stated the settlement was a very advantageous one and the defendants will profit greatly thereby. We feel that this matter should be remanded to the Lower Court for evidence to determine the value of the services rendered by the plaintiffs in relation to the future royalties by which the defendants are benefited herein.
For these reasons the judgment rendered herein is affirmed insofar as it awards the cash sum of $833.33 and is remanded to the Lower Court to receive evidence and fix a value on the services rendered by the plaintiffs as it affects the future royalty interest to the defendants in the property herein described.
Affirmed in part and remanded.