EDWARDS, Judge.
Plaintiff law firm sued defendant, a former client, for $1,542.80, allegedly representing the value of professional services rendered yet unpaid. The trial court gave judgment in favor of plaintiff for $232.80. Plaintiff appeals contending the award was inadequate, and defendant has answered that it was excessive.
Minnie Stewart was sued in two separate suits filed on October 19 and October 27, 1970 to enjoin her from interfering with logging operations on properties adjacent to hers and to her father’s. Allegedly she had trespassed on those properties and threatened at shotgun point loggers working there.
She retained Charles B. W. Palmer of the plaintiff firm to represent her in the *521 injunction proceedings, paying to him an initial retainer fee of $250.00
From the record we glean the following facts and circumstances leading to the injunction suits. In 1964, Minnie Stewart acquired through succession partition some 27 acres of land in St. Helena Parish. This land at the time of the injunction suits in 1970 was bounded on the north by property belonging to W. D. Kent, one of the plaintiffs seeking injunctive relief, and on the south by property of Burrell Carter, the other plaintiff. Minnie’s father, Robert Lee, owned a tract of some 100 acres bounded on the south at some points by the Kent property and at other points by the Carter property. The boundary between the Kent and Stewart properties and between the Lee and Carter properties has always been' described as the Greensburg-Harvell Mill Road. While the record is not clear as to where the alleged trespasses and threats occurred, we assume these took place somewhere along the Greensburg-Harvell Mill Road where it serves as the boundary between the above properties.
At' the trial of the instant case, Palmer testified to the nature of his activities on behalf of his client and the time expended therefor in order to establish the value of his services. He stated that, when Minnie Stewart came to him for representation in the injunction proceedings against her, she insisted that the Mill Road formerly was in a different location. Because of this, Palmer testified, he felt she had a possible defense: Should it be proved that the Mill Road was once further south of its present location, Minnie Stewart would stand to gain some 30 additional acres of land. Palmer, therefore, began investigations in hopes of uncovering some proof of an older Greensburg-Harvell Mill Road lying south of the present road.
We note at this point that, even assuming such an older road existed, its existence would be of questionable relevance at best to the injunction proceedings. Minnie Stewart’s land lies below and to the south of that of W. D. Kent. If the road were proved to be further south, she would then be in a position possibly to lose, not gain, additional land. Relative to the suit filed by Carter, the Greensburg-Harvell Mill Road forms no part of any boundary between the Carter and Stewart properties. This court is thus at a loss to understand appellant’s theory. The existence vel-non of an older road farther south appears simply irrelevant to the suits for injunctive relief against Minnie Stewart.
We speculate at this point that Minnie Stewart may have been acting in what she conceived to be the best interest of her father Robert Lee (who, the testimony at trial indicates, is very old and possibly semi-comatose) when and if she threatened the loggers on the boundary between the Carter and Lee properties. If this were so, it possibly explains Palmer’s reliance on an older road as a defense for Minnie Stewart. However, the Greensburg-Har-vell Mill Road previously had been determined by this Court to form the southern boundary of Robert Lee’s property and the northern boundary of the Tillery tract, which tract is adjacent to Carter’s. See Lee v. Tillery, 9 So.2d 816 (La.App. 1st Cir. 1942). It would, therefore, be eminently reasonable to infer that the same road in the same location with the same description would likewise be held to form the remaining southern boundary of Robert Lee’s property.
Palmer, however, testified and introduced a reconstructed time sheet to the effect that he spent some 28 hours in examining other suit records, obtaining and examining maps, and consulting with Minnie Stewart — all in connection with his attempt to find this other Greensburg-Harvell Mill Road. In all fairness to appellant, there evidently was some difference in the present and former location of the road. The testimony of Burrell Carter, appel *522 lant’s witness, is enlightening on this point:
CROSS EXAMINATION BY Joe Simpson
Q. This road, how far is this road — the old road from the existing road ?
A. They made a little cut-off across the creek and it is negligible difference.
Q. Can you see it from the old road?
A. Oh, yes.
Q. You wouldn’t have to go to Baton Rouge and study maps and spend eight hours examining the property lines to find this road, would you?
A. I wouldn’t, Mr. Simpson.
Q. Well, would anybody else have to do that?
A. Depends on how much they know about land titles and the lay of the land and so forth. I would rather not say what somebody else would do.
Q. Your testimony is you can see the road from the new road ?
A. Oh, yeah, it is right there by it, just a matter of a few feet.
The old road Mr. Carter was speaking of is the Greensburg-Harvell Mill Road. The new road is the blacktop highway more recently constructed. It is in fact south of the Mill Road by some 100 feet and therefore on Carter’s side of the Mill Road separating the Lee and Carter properties. It should have been reasonably obvious that this would be neither relevant nor beneficial to a defense of Minnie Stewart.
Other items on Palmer’s reconstructed time sheet include 4 Motions for a New Trial (2 in Carter v. Stewart and 2 in Kent v. Stewart, all filed within 2 days of each other and all filed before any was denied). The record reflects that Palmer was not present at the hearings on the rules for permanent injunction. The record also reflects a final pleading filed by Palmer after the Motions for New Trial were denied entitled “Motion to Strike The Motion for New Trial,” which motion was granted.
There were also several items relating to correspondence and telephone calls.
Ultimately, Minnie Stewart was enjoined from interfering with the Carter and Kent logging operations. The road she claimed existed was never found; she gained no additional land. Palmer testified at trial that, if nothing else, Minnie Stewart derived from his efforts on her behalf “peace of mind” from the knowledge that she had no valid claims on Carter’s or Kent’s land.
The trial court stated in written reasons that:
“It seems to the Court that the entire defense is based upon whether much of the work was necessary, and also the reasonableness of the charges made for particular items set forth in the affidavit. Primarily, the Court notes, from In Re: Intertate Trust and Banking Company, 235 La. 825, 106 So.2d 276, that the difficulty of the legal problem is one of the elements to be considered in a cause of this type.
“Mr. Palmer represents his clients with tenacity. However, such tenacity must be tempered with a realistic appraisal of the facts and the law, and a responsibility to terminate work and perhaps withdraw from a case when such appraisal indicates, with virtual certainty, as the Court believes was the case here, that the client is absolutely wrong and, to use Mr. Palmer’s own terminology, has nothing ‘... to hang her hat on.’
“After his initial consultation with his client, an examination of the previous suits, a site inspection and an examination of maps, Mr. Palmer should have been conclusively convinced that his client’s cause was without hope. At such time, he should have terminated further work, so advised her, and billed her for those services. If she then persisted in pursuing such a lost cause, despite Mr. Palmer's advice to the contrary, then if he wished to *523 continue to represent her, a definite fee arrangement should have been agreed upon. It is the Court’s opinion that much of his work was unnecessary in order for him to conclude that the matter was res judicata.
“Accordingly, the Court feels that an ample and generous award would be as follows:
$ 90.00 — original consultation with client
105.00 — examination of previous suits (3 hrs. @ $35.00)
140.00 — obtaining maps and examination of property site
101.25 — Consultation with Mr. Carter & correspondence
50.00 — preparing roughdraft of proposed boundary agreement
6.55 — telephone calls
$482.80 — Total
(250.00) — retainer fee paid
$232.80 — balance due"
We likewise feel that this award was generous and certainly ample.
The decision of the trial court is affirmed at appellant’s costs.
AFFIRMED.