BOUTALL, Judge.
This suit arose out of various events pursuant to the liquidation of a close corporation, of which members of three families were stockholders and officers. Plaintiffs-appellants Helen Reiss and her children appeal the trial court’s disposition of the case on the grounds that the trial court erred in the following respects: 1) in awarding James Morrison, Jr. only a $20,000.00 attorney fee for his legal work on behalf of the corporation, 2) in granting the court appointed liquidator a $50,000.00 fee without a hearing and, 3) in disbursing a Pension and Profit Sharing Plan without giving plaintiffs-appellants sufficient notice to prepare for the hearing on the matter. We affirm the trial court’s judgment for the reasons which will follow.
Superior Industries, the corporation in question, was incorporated some 25 years ago by James Morrison, Sr., Leon Greff, and Oswald Fuerst. Mr. Morrison, Sr., has been deceased for many years, while Mr. Greff and Mr. Fuerst continued as officers of the corporation until its liquidation in August, 1981.
Plaintiff-appellant Helen Reiss is the widow of Morrison, Sr. The other plaintiffs below are her children. Defendants below were Leon Greff, Oswald Fuerst, and his daughter Crescentia Pennock.
This litigation initially arose out of a dispute over the valuation of Mrs. Reiss’ stock when she dissented from the vote of the other two shareholders to liquidate and sell the corporation’s assets to a firm in St. Louis, Missouri.
At this point Mrs. Reiss retained her son, Mr. Morrison, Jr., to look after the family interest in the corporation. It should be noted here, for the purposes of our subsequent discussion, that Morrison, Jr. has a Ve interest in naked ownership of 25% or 32% of the corporate assets, subject to his mother’s usufruct.
When Morrison was furnished with a financial balance sheet of the corporation, he quickly realized that there were glaring omissions from the accounting, and a substantial amount of funds which was unaccounted for. Morrison filed for liquidation and accounting and began discovery. Due to his efforts in this respect, within approximately six weeks the sum of $580,000.00 was regurgitated by Leon Greff from personal accounts back into the corporation. *262 Morrison continued to be actively involved in the corporate liquidation proceeding and expended several hundred hours in this regard. The creative accounting methods and tax evasion practices of which the corporation availed itself, and of which it would appear from the record that the original shareholders had knowledge, resulted in a protracted and complex liquidation process, further exacerbated by the acrimony and discord of the three competing family groups. The Corporation was finally liquidated on August 26, 1981, however, the parties are still battling over remaining issues in the trial court.
ATTORNEY’S FEE FOR JAMES MORRISON, JR.
The difference of opinion as to how much Morrison, Jr. should have been awarded seems, from the appellant’s point of view, to depend on whether a quantum meruit basis should be used or whether, as the Morrison contingent contends, the “common fund” doctrine with a percentage fee should be applied.
The trial judge assigned his reasons orally, as follows:
I put the fee at $20,000.00 Mr. Morrison knowing fully well that you did a tremendous amount of work in this case, but as I reviewed the records and as I reviewed some of the work in this case, this work was done mainly by you for personal reasons and if you go back to the law suit that you filed, most of what you accomplished, would have been some of the things necessary for you to acquire in order to file the ... law suit against Mr. Greff.
We affirm the trial court’s award, with the following clarifications.
Appellants are in error in their belief that application of the “common fund” doctrine would mandate our awarding James Morrison, Jr. a flat 10%-15% of the funds which he recovered for the corporation. A brief history of the doctrine, as applied by Louisiana courts, is helpful at this point.
Our Supreme Court first applied what has now come to be called the “common fund” doctrine in In Re Interstate Trust & Banking Company, 235 La. 825, 106 So.2d 276 (La.1958).
In that case, on rehearing, the court authorized attorneys who had been hired by one group of depositors, but who succeeded in recovering a $700,000.00 fund to the benefit of all depositors, to collect attorney’s fees on a quantum meruit basis from the fund recovered. In essence, this is an equitable doctrine, the rationale being that since all members of a certain group share in the monetary benefit that the attorneys have ■ secured, that all should share in the compensation of the attorneys. Other courts in the state have since applied the “common fund” doctrine under similar factual circumstances. See Louisiana State Mineral Board v. Abadie, 164 So.2d 159 (La.App. 1st Cir.1964).
Courts have also refused to extend the doctrine to differing factual situations. See Kelly v. National Life & Accident Insurance Co., 393 So.2d 130 (La.App. 1st Cir. 1980). In that case an attorney was hired by the surviving wife and children of a deceased in order to challenge a concubine’s right to proceeds of an insurance policy. The attorney’s clients lost at trial, but in the course of the litigation the attorney discovered two more policies, heretofore unknown, which named the concubine as beneficiary. The attorney then argued that the concubine should be made to compensate him for that discovery under the common fund doctrine. The First Circuit Court of Appeal flatly rejected this argument, stating:
The authorities cited [In Re Interstate Trust & Banking] are clearly inapplicable. Intervenor-appellant [the attorney] is postured throughout these proceedings as an adversarial entity....
Ibid at 132.
The appellees contend that the Kelly case created a “conflicting interest” exception to the common fund doctrine which is apposite to the instant case. We find Kelly to be inapplicable to the facts before us.
*263 It cannot seriously be disputed that Mr. Morrison’s efforts in tracking down and securing large sums of corporate funds bene-fitted all the stockholders, some in spite of themselves. And from our review of the record we have no confidence in the assertions of some of the appellees that Morrison discovered and recovered nothing, that the funds were safe and sound where they were, and evidently would have trotted back into the corporate fold of their own accord. The fact that in this corporation the stockholders were also officers, and that relations among the three family groups of shareholders were distinctly competitive, should not obscure the fact that Superior Industries, and thus its shareholders, was directly benefitted by Morrison’s work.
We think that Morrison’s personal interest in the corporation does not automatically disqualify him from operation of the common fund doctrine. Rather, it is a factor which must be weighed when arriving at a quantum meruit award under that doctrine.
In In Re Interstate Trust & Banking, supra, the court set out the following factors to be considered in arriving at a fee “.. . the extent and nature of the services rendered, ... the labor, time and trouble involved; the results achieved; the character and importance of the matter; the amount of money involved; the learning, skill, and experience exercised; and the difficulty of the legal problems.” Ibid at 282.
Our review of the record leads us to conclude, as did the trial judge, that a great deal of the work Mr. Morrison did in this case was in order to protect his and his family’s interests. The benefit to the corporation, though perhaps to a great extent a by product of his championing of the family’s cause, is none the less tangible. This dual motivation on Mr. Morrison’s part influences such factors as time spent, and nature and extent of services rendered, which we consider in evaluating the reasonableness of the fee which the trial court awarded. Under the circumstances, we find the $20,000.00 Mr. Morrison received to be adequate compensation. Taking into account the 270 hours which Mr. Morrison testified he spent on the case in toto, for both the family’s and the corporation’s benefit, this figure averages out to approximately $74.00 per hour. Morrison testified that at that time he was charging his regular clients between $75.00 and $100.00 per hour. Furthermore, he will be receiving compensation from his family for services rendered on their behalf.
LIQUIDATOR’S FEE
Appellants contest the reasonableness of the $50,000.00 fee which the trial court awarded to George Vedros, the court appointed liquidator. Appellants argue that, considering the fee which Mr. Morrison was awarded for almost two years of work, Mr. Vedros’ fee for approximately two months of work, is clearly excessive. Furthermore, appellants complain that they were not afforded a hearing in which to contest the fee.
We are not persuaded by appellants’ arguments in this regard, and we conclude that the trial court did not abuse its discretion in awarding Vedros the aforementioned fee.
Mr. Vedros, in addition to being an attorney, has other obligations as court appointed liquidator of Superior Industries. He is bound by a personal fiduciary responsibility vis a vis the corporation, which necessitates that he exercise meticulous care in the discharge of his duties. Furthermore, in this case, Mr. Vedros was operating against a deadline, which he successfully met. Failure to liquidate Superior Industries by August 26, 1981, would have resulted in an additional $200,000.00 of tax liability for the corporation. We do not feel that Mr. Ved-ros should be penalized for being efficient and for accomplishing what needed to be done within two months time.
We affirm the amount set by the trial court even though there was no formal hearing on the fee nor was evidence submitted as to the precise amount of work done by Mr. Vedros. We do this because all of the work done by Mr. Vedros was under *264 close court supervision and court authorization. After his appointment Mr. Vedros attended every hearing in the case and had occasion to take the stand and inform the court and the parties of his progress toward liquidation. We feel that the trial judge, because of both his experience and his detailed knowledge of the case, was in a position to accurately assess the value of the work done.
Appellants complain that the ex parte method by which the trial court awarded Mr. Vedros his fee denied them their rightful opportunity to contest it. We find this contention to be somewhat of an afterthought on their part, since the record does not contain any appearance by them requesting an opportunity to contest the fee in a trial after it was awarded. Were this not the case, our holding might well be different, but under the circumstances we feel that appellants should not now be heard to complain.
DISBURSAL OF PENSION & PROFIT SHARING PLAN
Appellants also complain that they were given insufficient notice (1 day) to prepare for the hearing on disbursal of the pension and profit sharing plan to Mr. Fuerst and Mr. Greff. On this count we note that the following colloquy between the trial judge and Mr. Morrison:
Mr. Morrison: Let me tell you why I am asking for a continuance, Judge. The first I heard about this was when you called Monday morning.
The Court: I have been trying to get you for several weeks now.
In any event, the Morrison contingent was present for the October 2,1981 hearing at which the pension funds were disbursed. We have reviewed the record and we are unaware of any facts which would change the outcome of that hearing. Furthermore, the representations which appellants make to us on appeal disclose no grounds for a different disposition of the matter.
ANSWER TO APPEAL BY LEON GREFF
Leon Greff, one of the officers and former liquidator of the corporation, filed an answer to the appeal contending that the fee awarded Morrison, Jr., should be revoked; that some judgments of the trial court were made without notice; that there was no ranking of creditors and that his claim as a creditor should be ranked and paid.
As to the fee of Morrison, Jr., and the notice afforded Greff, we have discussed both issues above and apply those opinions to his contentions. As to his claim as creditor and the ranking of other creditors, those matters are not before us on this appeal. The trial court, in proceeding in an orderly fashion, has taken the claims of the various claimants, and obviously from his remarks, he intends to try the pending matters in turn. The record further discloses that the assets being held by the liquidator are very large in comparison to the few claims against the corporation, and those assets are readily available to whatever claimants may be entitled to them.
Shortly prior to the hearing of this case on appeal, Greff filed a motion to dismiss the appeals of the various Morrison appellants as being frivolous and as being subject to a prior agreement amongst the various claimants as to the corporate assets. The record does not disclose any such agreement as would stop appellants from pursuing their appeal, and their appeal is a serious one.
ANSWER TO APPEAL BY SCHOEMANN
Rudolph R. Schoemann has intervened in this appeal and filed an answer basically contending the same issues as Greff. Schoemann was made a party defendant as a possible debtor who may be holding corporate assets or may owe the corporation money. He also intervened in .the liquidation claiming that the corporation owes him money. He is simply a debtor or creditor and has no standing to intervene in this appeal. As noted, the assets of this corpo *265 ration are abundantly available to satisfy whatever claims he may have, and the trial court has not yet progressed to hearing all of the various claims or the disbursement of the funds. There is no showing that the issues involving him will not be heard in due course.
Appellants have filed a motion to dismiss the answer of Schoemann to their appeal. We have referred the motion to the merits and have considered the arguments and the record in this case. Because the intervenor’s interest is only that of a debtor or a creditor, we find that he does not have sufficient interest in this appeal in order to sustain an intervention, and accordingly we dismiss his intervention and answer to this appeal.
CONCLUSION
For the reasons above expressed, we affirm the judgment of the trial court. Each party to this appeal shall bear his own portion of the appellate costs.
AFFIRMED.