23 So.2d 50

Succession of RUSSELL.

No. 37705.

June 5, 1945.

C. Paul Phelps, of Ponchatoula, and Joseph M. Blache, Jr., of Hammond, for appellants.

Ponder & Ponder, of Amite, for appellee.

HAMITER, Justice.

Surviving Mrs. Sarah Norwood Russell, who died intestate in Tangipahoa Parish on January 5, 1941, were her husband, Lee Lafayette Russell, and the following children of the marriage, all majors and her sole and only heirs at law, namely: Mrs. Una Russell Goodbee, Mrs. Mollie Russell Ricks, Mrs. Lucy Russell Bankston, Mrs. Cecil Russell Hendry, Glen D. Russell and Clarence L. Russell.

After the occurrence of considerable litigation originated by Clarence L. Russell, Mrs. Cecil Russell Hendry and Mrs. Mollie Russell Ricks, the basis of which was the husband's failure to open decedent's succession and his alleged handling of the estate without regard to petitioners' rights thereto, Lee Lafayette Russell (the husband) made application for his appointment as administrator and for the taking of an inventory. In due course his appointment resulted and the inventory was taken. The property inventoried belonged to the community of acquets and gains that existed between the husband and wife.

Thereafter, pursuant to the administrator's petition, all of the property was sold on terms of cash to pay debts and succession charges, and at the sale Lee Lafayette Russell, in his individual capacity, was the purchaser for the sum of $13,130.

On September 20, 1943, the administrator filed what he termed his final account, reciting therein that he realized from the mentioned sale the sum of $13,130, from which proceeds he proposed to pay obligations of the community that are chargeable to the mass, these being court costs, administrator's fees, attorney's fees, insurance, taxes, and certain promissory notes, all totaling in amount $4,146.91. The balance, or $8,983.09, would be divided into two parts, one part of which belonged to him as the surviving spouse in community; and with the other part, being decedent's one-half interest, he proposed to pay the listed succession costs, totaling $1,382.63, such as expenses of the funeral and of the last illness. The $3,108.91 remaining, he further set forth, belonged to the six children born of the marriage between him and decedent, but it was subject to his usufruct as the surviving spouse. The administrator prayed that publication of notice of the final account's filing be ordered, and that in due course judgment be rendered approving and homologating the account and ordering a distribution of the funds in accordance with its terms.

Later the administrator supplemented his final account by listing for payment from the mass three additional promissory notes held by Hilton H. Russell and representing a total indebtedness of $559.16.

On October 5, 1943, Clarence L. Russell, Mrs. Cecil Russell Hendry and Mrs.

Mollie Russell Ricks filed what is styled an opposition to the final account. In it they oppose the payment of each item on the account except court costs, attorney's fees, taxes and insurance. They further oppose the plan of distribution, alleging that the administrator has not accounted for certain timber and cattle which belonged to the succession and was sold by him, that he is not entitled to a usufruct on the funds remaining after payment of debts, and that he has failed to make provision for a reasonable fee for the attorneys of opponents.

A trial was held on the opposition of the three named children, resulting in a judgment ordering that the final account be amended by striking therefrom several of the promissory notes listed for payment and adding thereto others, and by increasing the community assets to the extent of $928.94. The court further decreed that the account and plan of distribution, as amended, be approved and homologated; that there be distributed among the heirs, subject to the surviving spouse's right of usufruct, the sum of $3,573.38; and that a fee of $750 be paid to the attorneys for opponents out of the share to be received by the latter.

From the judgment opponents are prosecuting this appeal.

Opponents complain first of the court's approving for payment the notes held by Hilton H. Russell, they asserting that the supplemental account on which those obligations were listed was never advertised as required by Civil Code, art. 1184. Whether or not public notice was given of the supplemental account is not clearly disclosed by the record. It was admitted by counsel during the trial "that notices of the filing of the final account have been published according to law". But if it be conceded that the supplemental account was not advertised, opponents, we think, can not now make complaint of such failure, this for the reason that they had actual notice of its filing and contested, while their opposition was being tried, each of the items listed thereon.

With reference to the protest of opponents to the payment of the various items listed on the final account, and further to their contention that the administrator has not accounted for certain timber and cattle belonging to the succession and sold by him, it must be said that the record is replete with contradictory statements of witnesses and contains a mass of unsatisfactory and confusing evidence. Most of the numerous persons testifying were the litigants and their relatives, and between some of them there exists considerable animosity—a condition which undoubtedly is largely responsible for the irreconcilable conflicts in the evidence. The existence of this animosity is shown by a statement contained in the brief of opponents' counsel, it reading:

"The above brief resume of the facts does not show the bitterness with which each side prosecuted this case. It is a sad commentary on humanity in general, and perhaps on this family in particular, that a father finds himself arrayed in the forum with three of his children against the re-

maining three children to determine their respective rights to the legitime of the deceased wife and mother. In preparing this memorandum some months after trial counsel has studiously avoided any semblance of personality and has confined himself strictly to the legal problem."

■ ■ After our thorough study of all of the evidence we can only conclude that if some of the witnesses are to be believed the account with respect to the questioned items has been amply proved; if others, it should be revised in many particulars. From this it follows that we have before us presently the question of the veracity of the witnesses. For determining an issue of that kind the trial judge occupies a much better position than do we; he has the opportunity of hearing the witnesses and of observing their demeanor. Moreover, it is well settled that where the credibility of witnesses is involved, the finding of the district judge must be given great weight and should not be disturbed unless clearly erroneous. As before shown, the trial judge ordered the amending of the account by striking therefrom certain promissory notes listed by the administrator for payment and adding thereto others, and by increasing the community assets to the extent of $928.94, a portion of this increase being for timber sold by the husband after the wife's death. If certain witnesses are believed the evidence is sufficient to sustain this ruling; hence, we can not say that manifest error has been committed.

■ Opponents further contend that a fee of $1,313 for their attorneys should have been listed by the administrator as a preferred debt payable from the mass, arguing that valuable services were rendered by such attorneys to all of the heirs in seeking to restore to the estate the several items of property left off the inventory. But to support their contention no authorities are cited. The law of this state appears to sustain a contrary view. In Succession of Kernan, 105 La. 592, 30 So. 239, this court held that attorneys representing particular heirs in a succession proceeding have no claim against the estate for their services, even though such were valuable to other heirs; that they must obtain payment from the persons by whom employed. The Kernan case was cited approval in Forman v. Severage & Water Board, 119 La. 49, 43 So. 908, 12 Ann.Cas. 773, and Price v. Foster, 182 La. 79, 161 So. 161.

■ Finally, opponents insist that the district court erred in allowing the surviving spouse the usufruct on the funds derived from the sale of decedent's interest in the community property and which remained after the payment of succession debts. It will be remembered that all of the property inventoried belonged to the community that existed between the husband and wife. Being community property, the surviving husband owned an undivided one-half interest therein and held in usufruct the remaining one-half interest. Civil Code, art. 916. The fact that it became necessary to sell decedent's interest to pay succession debts did not, in our opinion, terminate the usufruct as to the residue of the proceeds. At least we know of no law which provides for such termi-

nation, and none has been cited to us. But in all events these opponents are without right to dispute the husband's right of usufruct to the residue, because each of them, as the record conclusively shows, agreed that all of the property listed on the inventory should be sold to pay debts.

For the reasons assigned the judgment appealed from is affirmed.

PONDER, J., recused.