344 So.2d 24 (1977)
Succession of Antoinette Broyard, wife of Mike GABRIEL, Jr. (a/k/a Michael Gabriel, Jr.)
No. 7623.
Court of Appeal of Louisiana, Fourth Circuit.
March 15, 1977.
Rehearings Denied April 13, 1977.
Writ Refused June 3, 1977.
*25 D. A. McGovern, III, New Orleans, for Mike Gabriel, Jr.
Thomas L. Giraud and Jones, Walker, Waechter, Poitevent, Carriere & Denegre, Ignatz G. Kiefer, Edward M. Heller, New Orleans, for Herbert Gabriel, Testamentary Executor for the Succession of Antoinette Broyard Gabriel.
Before LEMMON, GULOTTA and BEER, JJ.
LEMMON, Judge.
Involved in this litigation is a dispute over the proceeds of a sale of immovable property, which was sold pursuant to an option granted jointly by the decedent's surviving spouse in community and the executor of her succession under court authority. This appeal questions the trial court judgment which ruled that, under the facts of this case, the surviving spouse's perfect usufruct did not terminate with the sale, but attached as an imperfect usufruct to the proceeds of the sale.
Mrs. Antoinette Gabriel died on April 4, 1969 and was survived by her husband, ten of their children and the children of a predeceased child. The succession assets consisted entirely of community property.
Mrs. Gabriel's will established a special legacy of the family home and some surrounding acreage to the two children who lived there with their father. The remaining property, which was left by will to the testatrix' descendants subject to her husband's usufruct, consisted of the 24-acre tract whose sale is now in dispute, a few other parcels of vacant ground with relatively small value, and various items of movable property, including a relatively small amount of cash.
During the administration of the succession the executor and oldest son, Herbert Gabriel, sold some lots and shares of bank stock and mortgaged part of the 24-acre tract in order to pay the taxes and other debts and charges of the succession. Herbert testified that his 80-year old father, Mike Gabriel, wanted to sell the 24-acre tract to eliminate paying bank interest on the mortgage loan and that they agreed to place the approximately 1,000,000-square foot tract on the market for a price of $1.00 per square foot, with the proceeds of the sale to be divided equally between Mike Gabriel and Mrs. Gabriel's heirs. Mike Gabriel did not dispute that he agreed to the sale, but did deny that he promised to divide the proceeds.
After a series of negotiations over several years, the above mentioned option was executed. The property was sold on August *26 24, 1974 for $998,942.07, of which $249,710.51 was paid in cash, and two notes in the sum of $374,565.78 each were given for the balance of the purchase price. The surviving spouse received half of the cash and one of the notes, and the remainder of the cash and the other note were placed with the succession assets. At the time of the sale the balance on the mortgage loan was approximately $67,000.00.
After the sale the surviving spouse refused to execute a formal renunciation of his usufruct. He ultimately filed a rule demanding delivery of the remainder of the cash and the other note.
After an evidentiary hearing the trial court rendered judgment ordering delivery to the usufructuary of the note and of the net cash proceeds after payment of the debts and charges of the succession. In his reasons for judgment the trial judge concluded that the opponents to the rule had failed to prove an express renunciation of the usufruct and also found that the opponents had hoped for, rather than relied upon, any indication Mike may have given that he would renounce the usufruct. As to the effect of the voluntary sale by agreement between the usufructuary and the naked owners, the trial judge relied on the decision in Succ. of Russell, 208 La. 213, 23 So.2d 50 (1945), which held that a sale of the decedent's interest in succession property, when necessary to pay succession debts, does not terminate the usufruct as to any residue of the proceeds.
Herbert Gabriel filed separate appeals individually and as executor. We reverse on the basis that the Russell decision is not controlling, because it was not necessary in this case to sell the entire tract in order to pay the succession debts and because both the usufructuary and the naked owners voluntarily participated in the sale of the property in excess of that necessary to pay debts.
Most of the evidence in the voluminous record was directed at the questions of whether Mike Gabriel promised to renounce any claim to a usufruct after the sale and whether certain of the children withheld opposition to the sale (or at least to the sale of the entire property) in reliance on this promise. The evidence is conflicting as to whether or not Mike Gabriel made such a promise.[1] Because of the result we otherwise reach, it is not necessary that we resolve this conflict or that we determine the enforceability of that promise.[2]
The evidence, however, even if insufficient to prove a promise or to prove reliance on that promise, certainly established that (1) the usufructuary and the naked owners voluntarily participated in the sale of the entire tract, (2) the 24-acre tract, consisting of several parcels, could have been sold in part (and therefore either the usufructuary or the naked owners could have opposed the sale of the entire tract), and (3) the parties did not agree that the usufructuary would have a usufruct over the proceeds of the sale. The crucial issue thus framed by these facts is: What was the legal effect of the sale in which the usufructuary and the naked owners voluntarily participated without any agreement as to the continuation of the usufruct or other disposition of the succession's half of the sale proceeds?
*27 The parties in the present case obviously agreed to sell the property free of the usufruct in order to get a better price.[3] Furthermore, the naked owners could only have forced the usufructuary to sell succession assets in an amount sufficient to pay succession debts. Since all parties voluntarily agreed to the sale of the entire tract, there were three possibilities as to the disposition of the succession's half of the proceeds: (1) the usufructuary could renounce the usufruct and take none of the proceeds (which would require the express renunciation the trial judge found missing in the evidence); (2) the usufructuary and naked owners could act as co-sellers and divide the proceeds, the usufructuary getting an amount proportionate to the value of the usufruct at the time of the sale; or (3) the usufructuary could continue to enjoy his usufruct over the proceeds.
Prior to the amendment of C.C. art. 616 by Act. No. 103 of 1976, there was no positive law providing for continuation of the usufruct when property subject to the usufruct was sold by voluntary agreement between the usufructuary and the naked owner. Rather, such a sale is viewed as essentially an assignment for consideration made simultaneously by the usufructuary and the naked owner, usually for the purpose of conveying the property free of the usufruct. In the absence of a contrary agreement, the proceeds of a sale in which the usufructuary and naked owners join as co-sellers are apportioned between the usufructuary and the naked owner in proportion to the value of their respective interests. Bauman v. George, 154 La. 680, 98 So. 85 (1923).[4] See also comments following C.C. art. 616, as amended in 1976.
We distinguish those cases involving exceptional situations in which the usufructuary did not voluntarily participate in the sale. In Succ. of Russell, supra, it was necessary for the executor-usufructuary to sell the succession assets in order to pay succession debts, and thus one could not reasonably say that the usufructuary freely participated in the sale. The court merely held that the fact it became necessary to sell all of the succession property to pay succession debts did not terminate the usufruct as to any residue of the proceeds.
In Succ. of Singer, 208 La. 463, 23 So.2d 184 (1945) the executrix-usufructuary also sold some of the succession assets for the purpose of paying debts. In Succ. of Dielmann, 119 La. 101, 43 So. 972 (La.1942) shares of bank stock were converted into money when the bank liquidated its stock, without any voluntary act by the usufructuary, and the court held that the usufruct *28 attached to the proceeds. And in State through Dept. of Highways v. Costello, 158 So.2d 850 (La.App. 4th Cir. 1963) immovable property was expropriated for public purposes, and the court held the usufruct attached to the compensation paid.
The sale in the present case, however, cannot reasonably be construed as anything but a completely voluntary sale in which both the usufructuary and the naked owners freely participated. We conclude the legal consequence of this sale, in the absence of a contrary agreement, is that the usufructuary is entitled to that part of the decedent's half of the sale price proportionate to the value of his usufruct over the 24-acre tract (after payment of the debts and charges of the succession).
There is no evidence in the record bearing on the value of the usufruct or of the naked ownership. However, R.S. 47:2405 does provide the method for determining the value of a usufruct for the purpose of fixing the inheritance tax due a person inheriting naked ownership of property. In order to achieve final disposition, we apply this method and determine the value of the usufruct and of the naked ownership.
The usufructuary was 80 years old when he sold his usufruct. According to the tables in R.S. 47:2405, the present value of a life usufruct at that age is 22.5392 cents on each dollar value of the property in perfect ownership. Therefore, the decedent's one-half of the proceeds of the sale (net cash portion and credit portion) should be apportioned between the usufructuary and the naked owners in the proportion of 22.5392% and 77.4608% respectively as the value of their respective interests.
For these reasons, the judgment of the trial court is amended (1) to order that the executor of the Succession of Antoinette Broyard Gabriel deliver to Mike Gabriel, Jr. 22.5392% of the amount remaining from the succession's one-half of the cash portion of the sale price of the sale of August 22, 1974 after payment of the proper debts and charges of the succession, and (2) to recognize Michael Gabriel, Jr.'s 22.5392% interest in the promissory note, dated August 22, 1974, in the amount of $374,565.78 and in any payments already made or to be made on the note. As amended, the judgment is affirmed.
AMENDED AND AFFIRMED.
GULOTTA, J., concurs and assigns reasons.
GULOTTA, Judge, concurring.
I concur with the result. I cannot conclude that the result reached by the majority is unreasonable. However, I find equally reasonable the persuasive reasons of the trial judge and argument of the surviving spouse that Michael Gabriel, Jr. (the father), did not make an express renunciation of the usufruct.[1] As a matter of fact, he specifically refused to renounce. Further persuasive is the logic behind the argument that when the heirs joined in the sale of the property (which constituted almost the entire succession property), they acquiesced in the conversion from a perfect usufruct to an imperfect one.
Nevertheless, considering all of the circumstances, and particularly the delay (not conducive to the interest of the 82-year-old surviving spouse) which would result were I to reach a different conclusion, I concur with the result reached by the majority.
NOTES
[1] The attorney named in the will handled the succession and testified Mike Gabriel had agreed, from the time the decision was made to sell the 24-acre tract, that the children would receive their share of the proceeds and had confirmed this verbally on several occasions. Another attorney, who represented three of the children, testified he advised his clients not to oppose the sale only after being assured by the succession attorney that Mike had made this promise.

On the other hand, Mike Gabriel insisted that he never promised to give up his usufruct, although "people" tried to get him to do so. And Mike Gabriel's attorney testified that as early as April, 1971 Mike had told him he "wasn't going to divide anything". Nevertheless, in numerous discussions thereafter neither Mike Gabriel nor his attorney communicated to the succession attorney or to the executor Mike's unwillingness to give up any claim to a usufruct.
[2] The three children, who (in addition to the executor) claimed their consent to the sale of the entire tract was given in reliance on Mike's promise, did not oppose the rule and did not appeal from the judgment on the rule.
[3] Of course, the usufructuary could sell his right, C.C. art. 555, and the naked owner could sell the thing subject to the usufruct, C.C. art. 605, but the sale by the owner made no alteration in the right of the usufructuary, C.C. art. 617. But in logical analysis an offer of separate sale by either the usufructuary or the naked owner, acting alone, would attract only speculators; only an offer of joint sale by agreement between the usufructuary and the naked owner could expect to bring market value.
[4] This analysis is supported by the following doctrinal writings:

"If the usufructuary is a coseller of the thing subject to usufruct, his participation in the sale can not be considered a renunciation of his right, but rather an assignment of the usufruct for consideration, made simultaneously with the sale of the naked title. The usufructuary is then entitled to the portion of the price which represents the value of the usufruct in comparison with the naked ownership; he is not entitled to exercise his usufruct on the whole price." 2 Civil Law TranslationsAubry & Rau, Property § 234, p. 508 (La.St.L.Inst.Trans. 1966)
"If the usufructuary merely consents to the sale of the things free of his enjoyment, he does not thereby renounce his usufruct. The transaction involves, ordinarily, a simultaneous sale of the naked ownership and of the usufruct to the third purchaser for a single price. Upon completion of the sale, the usufructuary shall have a right to the part of the price corresponding to the value of his enjoyment, unless, of course, he has expressly renounced this right in favor of the naked owner. The usufructuary and the naked owner may agree that the usufructuary shall have the enjoyment of the entire price for the period of the usufruct; but, in the absence of agreement, the price of the sale is apportioned between the parties in proportion to the value of their respective interests." 3 Louisiana Civil Law TreatiseYiannopoulos, Personal Servitudes § 88, pp. 284-284 (1968).
[1] LSA-C.C. art. 624, in pertinent part, provides as follows:

"* * *
"In all cases the renunciation of the usufructuary can not be inferred from circumstances; it must be express."