HALL, Judge.
This litigation was commenced in 1976 by Ginger Bridwell, beneficiary of The Ginger Bridwell Trust, seeking an accounting by the trustee, her mother Mrs. Opal Orene Gordon Bridwell, for trust funds, consisting of the proceeds of a sale of real estate in which the trust owned a one-fourth inter *567 est, subject to the usufruct of the mother. After extensive and prolonged proceedings •in which the mother-trustee denied accountability for the. funds primarily on the basis that she retained the usufruct of the funds, judgment was rendered in 1979 against Mrs. Bridwell for $21,987.63, together with 7V2 percent per annum interest. The mother-trustee appealed.
The appeal raises issues of res judicata, renunciation of the usufruct, duties of the trustee, and the amount owed to the trust by Mrs. Bridwell, who was removed as trustee during the course of the litigation. Facts
Mr. Bridwell died in 1970 leaving plaintiff and a brother, Kenneth, as his sole heirs, and defendant as his surviving spouse in community. By judgment of possession, the widow and heirs were recognized as the owners of the succession property in the proportions of one-half to Mrs. Bridwell, one-fourth to Kenneth, and one-fourth to Ginger, with the children’s interest being subject to their mother’s Civil Code Article 916 usufruct. The principal asset of the succession was a tract of land.
In 1971, at the suggestion of an attorney, and apparently because of Ginger’s mental or health problems, Ginger created an inter vivos trust with her mother as trustee. Plaintiff’s interest in the land was conveyed by her to the trust. Plaintiff was the principal and income beneficiary of the trust.
In 1973 defendant, individually • and as trustee of The Ginger Bridwell Trust, joined by plaintiff and her brother, sold the tract of land for $175,000. Three checks were issued by the purchaser. Plaintiff’s brother received a check for one-fourth of the consideration. Mrs. Bridwell received a check for her one-half of the consideration. The third check for one-fourth of the consideration, less some unexplained deductions, was made payable to Mrs. Bridwell as Trustee of The Ginger Bridwell Trust. After having the bank issue cashier’s checks in payment of a doctor bill and another bill owed for Ginger’s account, Mrs. Bridwell deposited the balance of the proceeds in an account opened in her name as trustee. Over the next several months the account was substantially depleted by checks written by Mrs. Bridwell as trustee and in 1975 only a few dollars remained in the account.
In January 1976 Ginger Bridwell initiated a summary proceeding for an accounting in accordance with the Trust Code, LSA — R.S. 9:2088, 2221, and 2231. On April 23, 1976 a judgment was signed ordering an accounting. Subsequently, a letter from the Jones-boro Federal Savings & Loan Association showing that Mrs. Bridwell had on deposit an amount at least equal to $43,750 at IV2 percent per annum interest was filed as an accounting. In September 1976 plaintiff filed another petition seeking an accounting for the income received from trust funds, for payment to plaintiff of the total income as shown by the accounting, for termination of the trust and delivery of the trust assets to plaintiff, and, alternatively, for removal of Mrs. Bridwell as trustee. After a hearing in February 1977, a transcript of which is not in the record on appeal, the trial court rendered reasons for decision in which it noted that the sole question was who was entitled to the income from the $43,750 in the trust and in which it held that Mrs. Bridwell renounced her usufruct insofar as it pertained to the proceeds of the sale and that plaintiff was entitled to receive the income from the funds held in trust.
Another trial was held on June 27, 1977 and on that date judgment was rendered, and signed on June 30, ordering defendant to render a complete accounting showing the total amount and location of property belonging to the trust, together with all income received from the trust, and all sums paid to Ginger Bridwell from the trust. The judgment further removed Mrs. Bridwell as trustee of the trust and named a successor trustee. The judgment further ordered that Mrs. Bridwell deliver and pay to the successor trustee all of the property belonging to the trust on or before a certain date.
Mrs. Bridwell failed to comply with the judgment and contempt proceedings were had resulting in her incarceration. On July 12, 1978 an accounting was filed by Mrs. *568 Bridwell showing substantial expenditures to and on behalf of Ginger and showing a balance of the trust represented by cash of $16,749.37. On October 24, 1978 Mrs. Brid-well paid that amount to Effie Haga, who had since been named successor trustee of the trust.
On October 30, 1978 Ginger Bridwell filed a petition to traverse the accounting filed by Mrs. Bridwell, alleging that the amount to be accounted for was $65,325.90. Mrs. Bridwell filed a revised accounting, taking the position that the part of the proceeds to be accounted for was the naked owner’s present value as of the date of the sale, or $14,875.16, and that Mrs. Bridwell had paid more than that amount to or on behalf of Ginger and owed nothing.
After trial the district court on June 15, 1979 rendered written reasons for decision reaffirming its previous holding that the usufruct had been renounced, finding that defendant should account for the $43,750 representing one-fourth of the sales price of the property, finding that defendant had paid $5,013 to or for the beneficiary, leaving a balance of $38,737. Giving defendant credit for the $16,749.37 paid, the trial court rendered judgment for the balance of $21,-987.63. The trial court further found that since the record showed the funds were earning interest at the rate of 1lh percent per annum the trust was entitled to this interest as trust income. The judgment was for $21,987.63, together with interest at the rate of llh percent per annum on $38,-737 from January 81, 1973, the date of the sale, to October 24, 1978 when the payment was made, and together with Ph percent per annum interest on $21,987.63 from that date until paid.

Issues Raised on Appeal

Appellant specifies that the trial court erred (1) in concluding on the basis of circumstantial evidence that Mrs. Bridwell’s legal usufruct which burdened the inheritance of Ginger Bridwell had terminated; (2) in holding that any debt which Mrs. Bridwell may owe Ginger Bridwell bore interest at a rate in excess of the 7 percent per annum legal rate.
Appellee filed an exception of res judica-ta in this court contending that the issue of renunciation of the usufruct was determined by the district court’s' judgment of June 30, 1977, from which no timely appeal was taken, barring further consideration of that issue by this court on the appeal from the July 11, 1979 judgment.

Peremptory Exception of Res Judicata

A peremptory exception may be considered when filed for the first time in the appellate court if proof of the ground of the exception appears of record. LSA-C.C.P. Art. 2163. The earlier judgment was rendered pursuant to plaintiff’s petition for an accounting of the income of the trust, for payment of the income to her, for termination of the trust, for removal of the trustee, and delivery of the trust property to plaintiff. No answer was filed to the petition. The record on appeal does not contain a transcript of the proceedings held prior to rendition of judgment. The court’s written reasons for decision reflect that the court considered the issue of renunciation of usu-fruct and held the usufruct was renounced, but the judgment actually signed does not necessarily and conclusively reflect an adjudication of that issue. The judgment orders an accounting but does not specify an amount or nature of the property to be accounted for and orders payment of the trust funds to the successor trustee but does not state an amount or nature of the property to be transferred.
Because proof of the ground of the exception does not clearly appear from the record on appeal and also because of this court’s determination on the merits that the district court was essentially correct in finding the usufruct terminated, we exercise our discretion not to consider the peremptory exception of res judicata, and pass to a discussion of the merits of the case. Capital Loans, Inc. v. Stassi, 195 So.2d 670 (La. App. 1st Cir. 1967), writ refused 250 La. 889, 199 So.2d 912 (1967).

Renunciation of Usufruct

Appellant contends that there was no express renunciation of her usufruct by Mrs. *569 Bridwell as required by LSA-C.C. Art. 624 [1] which provided in pertinent part:
“In all cases the renunciation of the usufructuary can not be inferred from circumstances; it must be express.”
Appellant contends that since the usufruct was not expressly renounced and in the absence of any agreement as to the effect of the sale on the usufruct, under Succession of Gabriel, 344 So.2d 24 (La.App. 4th Cir. 1977), writ denied 346 So.2d 217 (La.1977), Mrs. Bridwell’s usufruct attached to that part of the proceeds equal to the present value of the property subject to the usufruct, which was $26,108.20, with the balance of $14,875.16 being due to the trust free and clear of the usufruct.[2] Appellant further contends that Mrs. Bridwell has' paid more than that amount to or on behalf of Ginger and owes nothing.
Ordinarily, an express renunciation of a usufruct should be evidenced by words to that effect either written or spoken. See Yiannopoulas, Civil Law Treatise Vol. 3, page 283, footnote 66. Compare LSA-C.C. Art. 1811. Although precise and ceremonial language need not be employed, unequivocal language understood by the owner is required. See LSA-C.C. Art. 1812. In this case, however, the usufructuary is Mrs. Bridwell and the naked owner is Mrs. Bridwell as trustee, with her interest in each capacity being directly in conflict. Necessarily then, the issue of whether she renounced her usufruct must be determined by her actions, and not her words communicated from herself in one capacity to herself in another capacity.
We hold that by-selling the property jointly in her individual capacity and as trustee, by consenting to the payment of the entire proceeds attributable to the trust’s one-fourth interest to the trustee of the trust, and by depositing the money to the account of the trustee, Mrs. Bridwell expressly renounced her usufruct of the proceeds of the sale. There could hardly be a more express renunciation of the usufruct of money than by payment and delivery of the money by the usufructuary to the naked owner. In Bauman v. George, 154 La. 680, 98 So. 85 (1923) the court held that a usufructuary waived and renounced her usufruct over the proceeds of a sale where she petitioned for partition of the property by licitation and for payment of the proceeds to the owners' in proportion to their respective interests. Compare a manual gift of money, LSA-C.C. Art. 1539, which is effected by delivery and is not subject to other formality. See Allen v. Allen, 301 So.2d 417 (La.App. 2d Cir. 1974), where a manual gift of money was found even though the donor retained dominion over a bank account in the donor’s capacity as a fiduciary for the donee, similar to Mrs. Bridwell’s dominion here as trustee.
This conclusion is supported by Mrs. Brid-well’s concession that she renounced the usufruct of the proceeds paid to her son even though there is no evidence of words, written or spoken, expressly renouncing the usufruct of that money. This conclusion is also consistent with Mrs. Bridwell’s duties as trustee of The Ginger Bridwell Trust. Any conclusion to the contrary would raise serious questions of a breach of duty owed by the trustee to the beneficiary of the trust in joining in a sale of the property, thereby converting a nonconsumable (land) which must be preserved (formerly a perfect usufruct) to a consumable (money) of *570 which the usufructuary becomes the owner (formerly an imperfect usufruct), with power to dispose of the money to the detriment of the trust and its beneficiary.
The usufruct of the funds having been renounced, and the funds having been delivered to the trustee, the trustee must account to the trust and its beneficiary for the funds and the income or profit the funds would have produced.

Amount of the Judgment

The trust’s share of the sales price was $43,750 for which Mrs. Bridwell as trustee must account. The trial court correctly found from the evidence that $5,013 was spent for the beneficiary’s account shortly after the proceeds went into the trust account, leaving a balance to be accounted for of $38,737. On October 24, 1978, after having been removed as trustee on June 30, 1977, and after having been ordered to pay the remaining funds belonging to the trust to the successor trustee appointed by the court, Mrs. Bridwell paid the successor trustee $16,749.37, leaving a balance of $21,-987.63 to be accounted for according to the trial court’s calculation. Finding that Mrs. Bridwell had funds on deposit actually earning 7V2 percent per annum interest, the trial court held the trust was entitled to such interest as trust income. Judgment was rendered against Mrs. Bridwell in favor of the trust for $21,987.63, plus 7V2 percent interest on $38,737 from January 31,1973 to October 24, 1978, plus 7Vr¿ percent interest on the total amount due from October 24, .1978 until paid.
The trust instrument provided' that income from the trust assets should be paid to the beneficiary annually. A trustee shall administer the trust solely in the interest of the beneficiary. LSA-R.S. 9:2082. A trustee shall exercise such skill and care as a man of ordinary prudence would exercise in dealing with his own property. LSA-R.S. 9:2090. A trustee is under a duty to take reasonable steps to take, keep control of, and preserve the trust property. LSA-R.S. 9:2091. A trustee shall keep the trust property separate from his individual property. LSA-R.S. 9:2094. A trustee can make a general deposit of trust money in a bank, but shall properly earmark the deposit as a deposit of trust funds by him as trustee. LSA-R.S. 9:2095. In investing, reinvesting, and managing trust property, a trustee shall exercise such skill and care as a man of ordinary prudence, discretion, and intelligence would exercise in the management of his own affairs, considering the probable income as well as the probable safety of his capital. LSA-R.S. 9:2127. A violation by a trustee of a duty he owes to a beneficiary as trustee is a breach of trust. LSA-R.S. 9:2081. If a trustee commits a breach of trust he shall be chargeable with a loss of the trust estate resulting from the breach, any profit made by him through the breach of trust, and any profit that would have accrued to the trust estate if there had been no breach of trust. LSA-R.S. 9:2201.
The trust bank account into which the sale proceeds were deposited was rapidly depleted by checks written on the account by Mrs. Bridwell as trustee. She has accounted for only a small part of the expenditures as having been for the benefit of the beneficiary. The evidence established that for some period of time Mrs. Bridwell had on deposit in her own name in a building and loan association, funds at least equal in amount to the funds belonging to or due to the trust, bearing interest at 7Va percent per annum. In addition to the principal amount due the trust, Mrs. Bridwell is liable for the income that would have accrued to the trust if the funds of the trust had been prudently invested. The trial court correctly determined the profit or income lost by the trust due to Mrs. Brid-well’s breach of trust on the basis of the interest actually being earned on funds held by Mrs. Bridwell as shown by her first accounting filed pursuant to court order. The trust was entitled to 7!/2 percent interest on the principal balance of the trust funds, $38,737, to the date of Mrs. Brid-well’s removal as trustee, June 30, 1977.
After that date, Mrs. Bridwell’s position was that of a debtor of the trust, indebted for an amount equal to the value of the trust funds and loss of profit during *571 her tenure as trustee ($38,737, plus 1lh percent interest on that amount to June 30, 1977). The only damages due for delay in the performance of an obligation to pay money is interest. LSA-G.C. Art. 1935. The judgment for the amount due by the trustee to the trust should bear interest at the legal rate of 7 percent from the date the debt became due, that is, the date of Mrs. Bridwell’s removal as trustee. LSA-C.C. Art. 1938. Mrs. Bridwell is entitled to a credit for the $16,749.37 paid on October 24, 1978. The judgment will be amended accordingly.
The judgment is amended and recast as follows:
It is ordered, ádjudged, and decreed that there be judgment herein in favor of plaintiff and against defendant, Opal Orene Gordon Bridwell, ordering defendant to pay to Effie Haga, successor trustee of The Ginger Bridwell Trust, the full sum of $38,737 principal, plus loss of profit or income equal to l}k percent per annum interest on the principal amount from January 31,1973 to June 30,1977, together with legal interest on said total amount of principal and interest at the rate of 7 percent per annum from June 30, 1977 to October 24, 1978, less a credit of $16,749.37 paid on that date applied first to accrued legal interest and then to the principal amount, together with legal interest on the balance after that date at the rate of 7 percent per annum from October 24, 1978 until paid, together with all costs of this proceeding, including the cost of appeal.
As amended and recast, the judgment is affirmed.

. The events giving rise to this suit took place prior to revision of the articles of the Civil Code relative to personal servitudes, accomplished by the enactment of Act 103 of 1976, effective January 1, 1977. As revised, LSA-C.C. Art. 626 now provides that a usufruct terminates by an “express written renunciation.”

. As revised (see footnote 1) LSA-C.C. Art. 616 now provides:
“When property subject to usufruct is sold by agreement between the usufructuary and the naked owner, the usufruct attaches to the proceeds of the sale unless the parties provide otherwise.”
LSA-C.C. Art. 618 provides that in cases governed by Article 616,
“. . . the naked owner may demand, within one year from receipt of the proceeds by the usufructuary, that the money be safely invested subject to the right of the usufructu-ary. . . .”